**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
)
AMERICAN IMMIGRATION            )
LAWYERS ASSOCIATION             )
)
        Plaintiff,              )
)
    v.                          )     Civ. Action No. 10-1224 (EGS)
)
UNITED STATES DEPARTMENT OF     )
HOMELAND SECURITY, et al.,      )
)
        Defendants.             )
_____)

<u>**MEMORANDUM OPINION**</u>

Plaintiff American Immigration Lawyers Association ("AILA" or "plaintiff") brings this action against the United States Department of Homeland Security ("DHS") and the United States Citizenship and Immigration Services, a DHS subdivision ("USCIS" collectively, "defendants") under the Freedom of Information Act ("FOIA"), seeking the release of information withheld by the USCIS.

Pending before the Court are the parties' cross-motions for summary judgment. Plaintiff principally argues that the USCIS waived its right to withhold or redact certain information because that information is in the public domain, and that even if waiver did not occur, certain material was improperly withheld because FOIA exemption 7(E) does not apply to those documents. *See* 5 U.S.C. § 552(b)(7)(E). In a cross-motion for

summary judgment, the USCIS disputes plaintiff's allegations of waiver, and argues that all withheld material was properly exempt from disclosure pursuant to several FOIA exemptions, including 7(E).

Upon careful consideration of the motions, the responses and replies thereto, the applicable law, and the entire record, the Court hereby **GRANTS** in part the plaintiff's motion for summary judgment and **DENIES** defendants' cross-motion for summary judgment without prejudice.

## I.   BACKGROUND

Plaintiff AILA is an association of over 11,000 attorneys and law professors who practice and teach immigration law. Plaintiff's Memorandum in Support of its Motion for Summary Judgment ("Pl.'s Br."), Docket No. 23-2, at 7.  Defendant USCIS is the agency that oversees lawful immigration to the United States, and is charged with disseminating information regarding immigration issues, granting immigration and citizenship benefits, promoting awareness and understanding of citizenship, and ensuring the integrity of the United States immigration system.  Defendants' Memorandum of Points and Authorities in Support of Cross-Motion for Summary Judgment ("Defs.' Br."), Docket No. 25-2, at 2.  Among its responsibilities, the USCIS processes H-1B temporary visa petitions filed by United States employers seeking to hire non-immigrant alien workers on a

temporary basis.  Defs.' Br. at 2.  The USCIS carries out this

function pursuant to the Immigration and Nationality Act

("INA"), 8 U.S.C. § 101(a)(15)(H)(i)(b), which provides for the

admission into the United States of temporary workers to perform

services in a specialty occupation.  Pl.'s Br. at 2; Defs.' Br.

at 2.

**A. Plaintiff's FOIA Requests**

Beginning in 2009, AILA submitted three FOIA requests to

the USCIS.  The requests were processed by the USCIS's National

Records Center ("NRC"), in compliance with DHS implementing

regulations found at 6 C.F.R. Part 5 and Management Directive

No. 0460.1.  Defs.' Statement of Material Facts ("Defs.' SMF"),

Docket No. 25-3, ¶ 1.

By letter dated February 6, 2009, Robert Deasy, AILA's

Director of Liaison and Information, submitted a FOIA request

("February 6 Request") to the USCIS on behalf of AILA for:

> Copies of any and all guidance, including, but not
> limited to memoranda, standard operating procedures,
> and templates used for Requests for Evidence regarding
> adjudicating H-1B petitions issued as a result of, in
> connection with, in light of, or related to the
> Benefits Fraud [Compliance] Assessment Report.

Defs.' SMF ¶ 7.  This request was assigned control number

NRC2009007831.  Defs.' SMF ¶ 8.

By letter dated March 18, 2009, AILA submitted a second

FOIA request ("March 18 Supplemental Request"), in which it

requested a document entitled "H1-B Processing Fraud Referral Sheet" ("H1-B Petition Fraud Referral Sheet") and petitioned for expedited processing. Defs.' SMF ¶ 9. This request was considered a supplement to the February 6 Request and was included within it for purposes of processing. *See id.* ¶¶ 9, 13. The request for expedited processing was denied. Defs.' SMF ¶ 13.

On April 13, 2009, AILA submitted a third FOIA Request ("April 13 Request") to the USCIS, this time seeking "The Compliance Review Worksheet Mentioned in Comment Request for Compliance Review Worksheet, 74 FR 15999 (April 8, 2009)" ("Compliance Review Report"). Defs.' SMF ¶ 14. The NRC received the April 13 Request on April 27, 2009. Defs.' SMF ¶ 15. The request was assigned control number NRC2009023483. Defs.' SMF ¶ 16. On May 8, 2009, AILA submitted a request to expedite the April 13 Request, which was denied by letter on May 28, 2009. Defs.' SMF ¶¶ 17, 18.

Several documents that resulted from USCIS's searches[1] are at issue in this case.

---

[1]    Although plaintiff initially challenged the adequacy of the searches conducted by USCIS, that issue is not raised by plaintiff on summary judgment and plaintiff does not dispute defendants' argument in their cross-motion that the searches were proper.

1. Compliance Review Report

One two-page, preprinted USCIS form entitled "Compliance
Review Report" was deemed responsive to AILA's April 13 Request.
Defs.' SMF ¶ 52; Substitute Declaration of Jill A. Eggleston
("Sub. Eggleston Decl."), Docket No. 25-5, ¶ 42.[2]  On June 9,
2009, the USCIS determined that the document should be withheld
in full pursuant to FOIA exemptions (b)(2)[3] and (b)(7)(E).
Defs.' SMF ¶ 53.  On August 7, 2009, AILA administratively
appealed the decision, which was affirmed on February 18, 2010.
Sub. Eggleston Decl. ¶¶ 38,40.  At some time after this
litigation was commenced on July 20, 2010, USCIS made the
determination that some of the information withheld could be
disclosed, and the USCIS released the document in redacted form
on October 27, 2010.  Defs.' SMF ¶¶ 57, 59; Watkins Decl., Ex.
12.  USCIS also released a revised index on that date, pursuant
to *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), explaining
USCIS's basis for withholding portions of the document.  *See*
October 27, 2010 *Vaughn* Index ("Oct. 27, 2010 *Vaughn* Index"),

---

[2]     The original Declaration of Jill A. Eggleston was filed in
connection with defendants' initial motion for summary judgment,
*see* Docket No. 11-5, and is not part of the record for the
renewed motions for summary judgment.

[3]     Following the Supreme Court's decision in *Milner v. Dep't
of the Navy*, 131 S. Ct. 1259 (2011), defendants have withdrawn
all assertions of exemption b(2) in connection with plaintiff's
FOIA Requests.  Defs.' Br. at 11, n.10; Sub. Eggleston Decl. ¶
44, n.4.

Ex. 21 to the Declaration of Seth A. Watkins in Support of Plaintiff's Motion for Summary Judgment, ("Watkins Decl."), at 4.

### 2. Neufeld Memorandum

A four-page memorandum by Donald Neufeld, Acting Associate Director of Domestic Operations, regarding H-1B fraud initiatives ("Neufeld Memorandum") was determined to be responsive to the February 6 Request and the March 18 Supplemental Request.  Sub. Eggleston Decl. ¶ 41.  The NRC initially determined that this document should be withheld in its entirety pursuant to FOIA exemptions (b)(2), (b)(5), and (b)(7)(E).  Defs.' SMF ¶ 51.  On March 11, 2010, AILA administratively appealed this decision.  Defs.' SMF ¶ 45.  The appeal was still pending when this action was filed.

At some time after this litigation was commenced on July 20, 2010, USCIS made the determination that some of the information withheld could be disclosed.  Defs.' SMF ¶ 54.  Much, but not all, of the information contained in the Neufeld Memorandum had been publicly disclosed with the publication of the H-1B Benefit Fraud and Compliance Assessment ("BFCA Report"), which is posted on the internet.  Defs.' SMF ¶¶ 54-55; Watkins Decl., Ex. 2.  Moreover, the Neufeld Memorandum was issued in September 2008 as a final agency determination,

rendering FOIA exemption (b)(5) inapplicable as authority for withholding that document from public viewing. Defs.' SMF ¶ 56. The USCIS therefore released the document in redacted form on October 27, 2010, and the USCIS's basis for withholding the document was explained in the October 27 *Vaughn* Index. Defs.' SMF ¶¶ 57, 59; Oct. 27, 2010 *Vaughn* Index, Watkins Decl., Ex. 21, at 1.

3. <u>H-1B Petition Fraud Referral Sheet</u>

A two-page pre-printed USCIS form entitled "H-1B Petition Fraud Referral Sheet" was also determined to be responsive to the February 6 Request and March 18 Supplemental Request. Sub. Eggleston Decl. ¶ 41. NRC made the initial determination that the document should be withheld pursuant to FOIA exemptions (b)(2), (b)(5), and (b)(7)(E) and that there were no reasonably segregable portions for release. Defs.' SMF ¶¶ 43-44. On March 11, 2010, AILA administratively appealed that decision. Defs.' SMF ¶ 45. The appeal was still pending when this action was filed.

At some time after this litigation was commenced on July 20, 2010, USCIS made the determination that some of the information withheld could be disclosed, and the USCIS released the document in redacted form on October 27, 2010. Defs.' SMF ¶¶ 57, 59. The October 27, 2010 *Vaughn* Index explained the

basis for withholding portions of the document.  Oct. 27, 2010
*Vaughn* Index, Watkins Decl., Ex. 21, at 2.

**B. Initial Cross-Motions for Summary Judgment**

After releasing the redacted versions of certain documents,
defendants moved for summary judgment on December 10, 2010,
asserting that they had satisfied all of their obligations with
respect to AILA's FOIA requests.  *See* Docket No. 11.  Plaintiff
filed its opposition to defendants' motion for summary judgment
and in support of plaintiff's cross-motion for summary judgment
on January 14, 2011.  Docket No. 13.  Plaintiff challenged,
among other things, the adequacy of defendants' searches.  When
the USCIS reviewed plaintiff's summary judgment filing, it
determined it may have missed documents potentially relevant to
plaintiff's requests.  Defs.' SMF ¶ 60.  With plaintiff's
consent, the USCIS commenced a renewed search for documents
responsive to AILA's FOIA requests on March 29, 2011.  Defs.'
SMF ¶ 61.  USCIS made a subsequent production of documents to
plaintiff on May 9, 2011 and submitted a Supplemental *Vaughn*
Index describing the materials withheld.  May 9, 2011 *Vaughn*
Index ("May 9, 2011 *Vaughn* Index"), Watkins Decl., Ex. 20; *see*
Plaintiff's Statement of Material Facts ("Pl.'s SMF") ¶ 21.
Plaintiff refers to several of the documents produced on May 9,
2011 as the "newly-identified documents."

### C. Renewed Cross-Motions for Summary Judgment

AILA filed a renewed motion for summary judgment on May 31, 2011.  In its motion, AILA alleges that USCIS improperly invoked exemption 7(E) as to several documents that were produced with redactions, and that USCIS has waived any ability to withhold the documents because they are in the public domain.  Defendants filed a cross-motion for summary judgment, asking the Court to determine that they satisfied their obligations under FOIA as to all documents produced or withheld, that they properly invoked exemptions, and that they did not waive its ability to invoke the exemptions because of information that exists in the public domain.

## II.  LEGAL FRAMEWORK

### A. Rule 56

Pursuant to Federal Rule of Civil Procedure 56, summary judgment should be granted if the moving party has shown that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Waterhouse v. District of Columbia*, 298 F.3d 989, 991 (D.C. Cir. 2002).  In determining whether a genuine issue of fact exists, the court must view all facts in the light most favorable to the non-moving party.  *See Matsushita Elec. Indus. Co. v. Zenith*

*Radio Corp.*, 475 U.S. 574, 587 (1986).  Likewise, in ruling on cross-motions for summary judgment, the court shall grant summary judgment only if one of the moving parties is entitled to judgment as a matter of law upon material facts that are not genuinely disputed.  *See Citizens for Responsibility & Ethics in Wash. v. Dep't of Justice*, 658 F. Supp. 2d 217, 224 (D.D.C. 2009) (citing *Rhoads v. McFerran*, 517 F.2d 66, 67 (2d Cir. 1975)).

### B. FOIA

FOIA requires agencies to disclose all requested agency records, 5 U.S.C. § 552(a), unless one of nine specific statutory exemptions applies, *id*. § 552(b).  It is designed to "pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny."  *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976) (citations omitted).  "Given the FOIA's broad disclosure policy, the United States Supreme Court has 'consistently stated that FOIA exemptions are to be narrowly construed.'" *Wolf v. CIA*, 473 F.3d 370, 374 (D.C. Cir. 2007) (quoting *Dep't of Justice v. Julian*, 486 U.S. 1, 8 (1988)).

"FOIA's 'strong presumption in favor of disclosure places the burden on the agency to justify the withholding of any requested documents." *Dep't of State v. Ray*, 502 U.S. 164, 173 (1991).  The government may satisfy its burden of establishing

its right to withhold information from the public by submitting appropriate declarations and, where necessary, an index of the information withheld.  *See Vaughn v. Rosen*, 484 F.2d 820, 827-28 (D.C. Cir. 1973).  "If an agency's affidavit describes the justifications for withholding the information with specific detail, demonstrates that the information withheld logically falls within the claimed exemption, and is not contradicted by contrary evidence in the record or by evidence of the agency's bad faith, then summary judgment is warranted on the basis of the affidavit alone." *ACLU v. Dep't of the Defense*, 628 F.3d 612, 619 (D.C. Cir. 2011); *see id*. (an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible') (internal citations omitted).

## III. DISCUSSION

In its motion for summary judgment and its response to defendants' motion, plaintiff primarily challenges defendants' redaction of three documents: (1) the Compliance Review Report Form; (2) The Neufeld Memorandum; and (3) the H-1B Petition Fraud Referral Sheet.  Plaintiff also argues that defendants waived the right to claim that certain "newly-identified documents" that were produced on May 9, 2011 are properly withheld under Exemption 7(E) because they purportedly contain

publicly-disclosed information, but plaintiff does not challenge the applicability of Exemption 7(E) to those documents.

Defendants, in their cross-motion for summary judgment, seek summary judgment as to the entirety of their searches and subsequent responses to plaintiff's FOIA Requests.  Defendants argue that all exemptions were properly invoked and that all reasonably segregable information was disclosed.  Plaintiff, in its opposition, does not dispute the withholding of material pursuant to exemption 7(E) other than in connection with the Compliance Review Report, the Neufeld Memorandum, and the H-1B Petition Fraud Referral Sheet.  Plaintiff also does not respond to defendants' arguments regarding the appropriateness of defendants' searches as a whole, or the withholding of documents pursuant to exemptions b(5) or b(6).  Therefore, those points are deemed conceded.

Accordingly, the issues before the Court are 1) whether defendants waived their right to withhold all or portions of the Compliance Review Report, the Neufeld Memorandum, the H-1B Petition Fraud Referral Sheet, and certain "newly-identified documents" under the "public domain doctrine"; 2) whether defendants properly sought to withhold the Compliance Review Report, the Neufeld Memorandum, and the H-1B Petition Fraud Referral Sheet under Exemption 7(E); and 3) whether defendants'

*Vaughn* indexes and the Substitute Eggleston Declaration properly indicate whether all reasonably segregable information has been released.

### A. Waiver/Public Domain Doctrine

The threshold issue before the Court is whether the USCIS waived its right to invoke Exemption 7(E) and withhold redacted material in several documents it produced pursuant to the AILA's FOIA Requests.  The public domain doctrine sets a high standard that a plaintiff must meet in order to establish that the government has waived an otherwise-valid FOIA exemption. "[FOIA] bars the courts from prying loose from the government even the smallest bit of information that is properly classified." *Afshar v. Dep't of State*, 702 F.2d 1125, 1130 (D.C. Cir. 1983) (Exemptions 1&3).  "Under [the] public domain doctrine, materials normally immunized from disclosure under FOIA lose their protective cloak once disclosed and preserved in a permanent public record." *Cottone v. Reno*, 193 F.3d 550, 554 (D.C. Cir. 1999) (citing *Niagra Mohawk Power Corp. v. Dep't of Energy*, 169 F.3d 16, 19 (D.C. Cir. 1999) (Exemption 4)); *Public Citizen v. Dep't of State*, 11 F.3d 198, 201-03 (D.C. Cir. 1993) (Exemption 1); *Davis v. Dep't of Justice*, 968 F.2d 1276, 1276 (D.C. Cir. 1992) (Exemptions 3 & 7(C)); *Ashfar*, 702 F.2d at 1130-34.  The logic of this doctrine is that "where information

13

requested 'is truly public, the enforcement of an exemption cannot fulfill its purposes.'" *Id*. (quoting *Niagra Mohawk*, 169 F.3d at 19). "[A] plaintiff asserting that information has been previously disclosed bears the initial burden of pointing to specific information in the public domain that duplicates that being withheld." *Public Citizen*, 11 F.3d at 201 (citing *Afshar*, 702 F.2d at 1130). The D.C. Circuit has held that "when information has been 'officially acknowledged,' its disclosure may be compelled even over an agency's otherwise valid exemption claim. *Fitzgibbon v. CIA*, 911 F.2d 755, 765 (D.C. Cir. 1990). The Court identified three requirements to determine whether the government has waived its right to withhold the sought information by officially acknowledging it. Specifically, plaintiff must establish that the information requested is as specific as the information previously released, must match the information previously disclosed, and must have already been made public through an official and documented disclosure. *Fitzgibbon v. CIA*, 911 F.2d at 765.

### 1. Compliance Review Report Form

Plaintiff argues that the Compliance Review Report Form released in redacted form should be released in full because the redacted portions are in the public domain. *See* Pl.'s Br. at 12 (citing Watkins Decl., Ex. 12). The agency produced a redacted

14

version to AILA on October 27, 2010, asserting Exemption
(b)(7)(E) as to the redactions.  *See* Watkins Decl., Ex. 12; *see*
Oct. 27, 2010 *Vaughn* Index, Watkins Decl. Ex. 21.

     In support of its argument that the redacted portions of
the Compliance Review Report Form are in the public domain,
plaintiff cites to four versions of instructions purportedly
used by on-site investigators to complete the Compliance Review
Report Form.  Plaintiff argues that these instructions provide
the same information, and indeed more information, than the
Compliance Review Report.  Plaintiff argues that the public
availability of these instructions prevent USCIS from seeking to
withhold the information in the Compliance Review Report Form
under Exemption (b)(7)(E).  Pl.'s Br. at 12-14.  The versions of
the instructions include (1) a version that was included in the
appendix of a book published by Thompson/West (Watkins Decl.,
Ex. 7); (2) a version of the instructions dated December 5, 2008
that is available on the internet  (Watkins Decl., Ex. 8); (3) a
version of the instructions dated July 22, 2009 that was
produced on May 9, 2011 in response to AILA's FOIA Requests
(Watkins Decl., Ex. 29); and (4) a general description of the
information sought by inspectors during site visits that is
available on the USCIS's website.  Watkins Decl., Ex. 6.

     Defendants argue that AILA has failed to establish that any
of the instructions "match" the information that USCIS has

withheld.   The Court agrees.   AILA has not established that any

of these alleged instructions specifically correspond to the

version of the form that it seeks to compel USCIS to produce in

full, which bears an apparent date of June 19, 2009.   *See*

Watkins Decl., Ex. 12.   The instructions published by

Thompson/West bear no date, and the other versions of the

instructions are dated December 5, 2008 and July 22, 2009,

respectively.   Plaintiff has failed to persuade the Court that

the date is not relevant to the public disclosure analysis.

The general description of site visits (Watkins Decl., Ex.

6) is even less specific than the different versions of the

instructions, giving the reader only a general overview of the

process.   Accordingly, plaintiff has failed to meet its initial

burden of pointing to specific information in the public domain

that duplicates what is being withheld.   *Public Citizen*, 11 F.3d

at 201 (plaintiff bears burden of pointing to specific

information in the public domain that duplicates that being

withheld).[4]

---

[4]      Because plaintiff has failed to meet its initial burden,
the Court need not reach the question of whether any of the
Compliance Review Report Instructions cited by plaintiff were
publicly disclosed.   The Court notes, however, that USCIS has
conceded that its disclosure of the July 22, 2009 instructions
in response to AILA's FOIA Requests was an "official
disclosure."   Defendants' Reply to Plaintiff's Opposition to
Defendants' Cross-Motion for Summary Judgment ("Defs.' Reply"),
Docket No. 30, at 2.

2. <u>H-1B Petition Fraud Referral Sheet</u>

AILA argues that the H-1B Petition Fraud Referral Sheet, which was released to AILA in redacted form, is "fully in the public domain" because it is part of a judicial record in another litigation.  Pl.'s Br. at 14; Watkins Decl., Ex. 11. AILA also argues that the document is in the public domain because USCIS agreed it did not need to be filed under seal in this matter.  Pl.'s Br. at 15 (citing Docket No. 16 ("Defendant's position is that Exhibit[]...15 is publicly available and therefore not appropriately filed under seal."). The parties do not dispute that a version of an H-1B Petition Fraud Referral Sheet was filed by USCIS as an exhibit on June 24, 2010 in the *TechServe Alliance v. Napolitano* matter.  *See* Case No. 10 Civ. 00353 (D.D.C.), Docket No. 16, Ex. 1.  The parties also do not dispute that USCIS agreed that the same exhibit did not need to be filed under seal in this matter.  *See* Docket No. 16-3.  The parties do dispute, however, the effect of these filings.

AILA contends that the filing of the H-1B Petition Fraud Referral Sheet by USCIS on a public docket constitutes a "public disclosure."  In support of its argument, plaintiff cites *Cottone* for the proposition that evidence submitted in court becomes part of the public domain under FOIA unless and until destroyed or placed under seal.  Pl.'s Br.  at 14-15 (citing

*Cottone*, 193 F.3d at 554).  Defendants argue that the exhibit filed in *TechServe* was an earlier version of the document than the one at issue in this litigation.  Defs.' Br. at 25. Defendants further note that the document was attached to USCIS's filing because it had been attached to the FOIA request made by the plaintiff in that case, and was filed by USCIS in that lawsuit to support USCIS's arguments that it had properly asserted exemptions under FOIA, which would distinguish it from a willful disclosure.  See *id*.  Defendants note that a notation on the bottom of the document indicates that it had been obtained from an archive entitled "AILA InfoNet," rather than from any official USCIS source.  *Id*.

The Court agrees with Defendants on this issue.  As with the Compliance Review Report Form discussed previously, the Court finds that because the fraud referral form filed in the *TechServe* matter was a different version than the one at issue in this case, AILA has failed to meet its burden of pointing to specific information in the public domain that duplicates what is being withheld.  *See Public Citizen*, 11 F.3d at 201. Moreover, even if AILA could establish that the form was the same form at issue in this matter, AILA has not established that the form was made public through an official disclosure.  *See Fitzgibbon*, 911 F.2d at 765.  Indeed, it appears the only reason the form was filed on the public docket in *TechServe* is because

18

it was attached to the plaintiff's FOIA request in that matter, which USCIS then filed as an exhibit to a declaration explaining the steps taken to respond to that plaintiff's FOIA request. AILA has not persuaded the Court that the attachment of the FOIA request (and the H-1B Fraud Referral Sheet) was done for the purpose of any desire to officially disclose the document; to the contrary, it appears that the document was filed in support of USCIS's arguments in that case that it had responded appropriately to the FOIA requests it had received. *See Frugone v. CIA*, 169 F.3d 772, 774 (D.C. Cir. 1999) ("[W]e do not deem 'official' a disclosure made by someone other than the agency from which the information is being sought.") (citations omitted); *Valfells v. CIA*, 717 F. Supp. 2d 110, 117 (D.D.C. 2010) (noting that FOIA plaintiffs must point to information in the public domain that was previously disclosed by the same agency). For the same reasons, the Court is not persuaded that USCIS has waived its right to withhold the document based on its agreement that the earlier version of the form did not require filing under seal because it was part of the record in the *TechServe* matter. Therefore, the Court finds that no official disclosure occurred, and defendants did not waive their ability to claim Exemption 7(E) for the H-1B Petition Fraud Referral Sheet.

### 3. Neufeld Memorandum

AILA contends that "[a]t least some of the redacted content" in the Neufeld Memorandum is also in the public domain and should be released.  Pl.'s Br. at 15 (citing Watkins Decl., Exs. 10 & 21).  Specifically, AILA contends that the BFCA Report serves as the basis for the Neufeld Memorandum.  Pl.'s Br. at 16.  The parties do not dispute that the BFCA Report has been publicly disclosed.  Defs.' SMF ¶ 55.  Indeed, USCIS stated that it reconsidered its withholding of the Nuefeld Memorandum specifically because of the public availability of the BFCA Report.  Defs.' SMF ¶¶ 54-55.

AILA contends that "fraud indicators" redacted in the Neufeld Memorandum necessarily include the "fraud indicators" discussed in the BFCA Report.[5]  AILA also claims that the Neufeld Memorandum makes reference to the BFCA Report "when introducing

---

[5]     The final page of the BFCA Report identifies several primary fraud or technical violation(s) indicators: (1) firms with 25 of fewer employees have higher rates of fraud or technical violation(s) than larger-sized companies; (2) firms with an annual gross income of less than $10 million have higher rates of fraud or technical violation(s) than firms with annual gross income greater than $10 million; (3) firms in existence less than 10 years have higher incidences of fraud or technical violation(s) than those in existence for more than 10 years; (4) H-1B petitions filed for accounting, human resources, business analysts, sales and advertising occupations are more likely to contain fraud or technical violation(s) than other occupational categories; and (5) beneficiaries with only bachelor's degrees had higher fraud or technical violation(s) rates than those with graduate degrees.  Pl.'s SMF ¶ 3.

the guidance concerning fraud indicators."  Pl.'s Br. at 16.

Defendants argue that AILA's speculation as to the relationship

between the BFCA Report and the Neufeld Memorandum falls short

of the requirement to show that the information in the

memorandum "matches" or is the specific information included in

the BFCA Report.  Defs.' Br. at 25-26.  The Court agrees.  By

making a general allegation about the relationship between the

BFCA Report and the Neufeld Memorandum, AILA has fallen far

short of showing that the redacted material in the Neufeld

Memorandum is the specific information disclosed in the BFCA

Report or that it matches the material in the BFCA Report.

Accordingly, USCIS has not waived its right to claim an

exemption for this document.  *See Public Citizen*, 11 F.3d at

201.

    4. "Newly-Identified Documents"

    Plaintiff's final argument is that "[t]o the extent

defendants' newly-identified documents...also include segregable

portions which are in the public domain, as discussed above with

respect to the Neufeld Memorandum, defendants should be ordered

to release such portions."  Pl.'s Br. at 16.  AILA cites

generally to Exhibits 22 through 25 to the Watkins Declaration,

which are redacted documents produced by USCIS in response to

AILA's FOIA Requests and were reflected in defendants' May 9,

2011 *Vaughn* Index.   In response, the USCIS argues that AILA has
failed to point to any redactions in those documents that it
contends contain information that was officially released by
USCIS, and AILA also fails to provide any analysis or legal
argument.   The Court agrees.   Accordingly, the Court finds that
AILA has failed to carry its initial burden of showing that the
specific information contained in any of these documents exists
in the public domain.   *See Public Citizen*, 11 F.3d at 201.

### B. Exemption 7(E)

        Having found that no waiver occurred, the Court must now
determine whether the agency properly withheld and redacted
material in the Compliance Review Report Form, the H-1B Petition
Fraud Referral Sheet, and the Neufeld Memorandum pursuant to
Exemption 7(E).[6]   Plaintiff does not challenge the applicability
of Exemption 7(E) to what it refers to as the "newly-identified
documents" cited in the May 9, 2011 *Vaughn* Index.   *See* Watkins
Decl., Exs. 22-25.

---

[6]      As discussed more fully below, Exemption 7(E) protects
records or information compiled for law enforcement purposes
from disclosure "to the extent that the production of such law
enforcement records or information . . . would disclose
techniques and procedures for law enforcement investigations or
prosecutions if such disclosure could reasonably be expected to
risk circumvention of the law."   5 U.S.C. § 552(b)(7)(E).

1. Defendants' Stated Exemptions

Defendants have set forth the basis for their exemptions in the October 27, 2010 *Vaughn* Submission.  Defendants describe the Compliance Review Report as

> a questionnaire that is filled out by USCIS/ICE Site
> Inspectors, documenting their personal observations.
> Items 1-10 are the actual questions asked onsite, and
> provide the foundation for any additional impromptu or
> follow-up questions that might later be asked.  More
> important, the decision whether to initiate a more
> scrutinizing investigation is, invariably, based upon
> the recommendation proffered by the author of the
> report.

Oct. 27, 2010 *Vaughn* Index, Watkins Decl., Ex. 21 at 4.  The USCIS explains that it asserts Exemption 7(E) because

> [t]he public disclosure of the questions contained in
> this questionnaire will alert all to the precise
> nature of conduct, behavior, and conditions that will
> draw the attention of law enforcement authorities, and
> instruct those so disposed to simultaneously violate
> the law and avoid detection by adjusting their
> responses to the questions accordingly.  Consequently,
> the investigative questions...are eligible for [the
> 7(E) Exemption] since their disclosure would impair
> the effectiveness of the fraud detection techniques
> revealed therein.

*Id*.

With respect to the Neufeld Memorandum, USCIS states that that the document

> reveals very particular and sensitive criteria (fraud
> indicators) used by adjudicators to determine which
> cases of suspected fraud to refer for further
> investigation . . . . Anyone in possession of this
> document would have, essentially, a roadmap by which
> they could follow to avoid attracting attention and
> close scrutiny by either 'doctoring' their H-1B

applications (or associated forms); 'staging' places
of employment; manufacturing employment records; or
engaging in any number of other ploys designed to
deceive immigration and law enforcement authorities.

*Id.* at 1-2.

The USCIS describes the H-1B Petition Fraud Referral Sheet
as the "companion document" to the Neufeld Memorandum, "employed
to make referrals of suspected fraud cases to the USCIS Center
Fraud Detection Operation (CFDO)."  The USCIS states that the
exemption applies because the document

is, literally, a checklist of fraud indicators that
agency adjudicators are required to strictly adhere to
in order to ensure that actionable fraud referrals are
being sent to the Center Fraud Detection Operation
(CFDO)..... [The document could be used] to determine,
with surgical precision and consistent accuracy, the
patterns of conduct and forms of operations to be
avoided by potential defrauders seeking to skirt
closer agency scrutiny and escape detention....
Accordingly, the document is being withheld to
preserve the integrity and effectiveness of certain
techniques and operations of current law enforcement
significance.

*Id.* at 3-4.

  2. Exemption 7(E) Generally

Exemption 7(E) protects records or information compiled for
law enforcement purposes from disclosure "to the extent that the
production of such law enforcement records or information . . .
would disclose techniques and procedures for law enforcement
investigations or prosecutions if such disclosure could
reasonably be expected to risk circumvention of the law."  5

U.S.C. § 552(b)(7)(E).  Courts have held that information
pertaining to law enforcement techniques and procedures is
properly withheld where disclosure reasonably could lead to
circumvention of laws or regulations.  *See, e.g.*, *Skinner v.
Dep't of Justice*, 744 F. Supp. 2d 185, 214 (D.D.C. 2011) (citing
cases).  "[A] highly specific burden of showing how the law will
be circumvented" is not required; instead, "exemption 7(E) only
requires that [the agency] 'demonstrate[] logically how the
release of [the requested] information might create a risk of
circumvention of the law.'"  *Mayer Brown LLP v. IRS*, 562 F.3d
1190, 1194 (D.C. Cir. 2009) (quoting *PHE, Inc. v. Dep't of
Justice*, 983 F.2d 248, 251 (D.C. Cir. 1993)).  "If an agency's
affidavit describes the justifications for withholding the
information with specific detail, demonstrates that the
information withheld logically falls within the claimed
exemption, and is not contradicted by contrary evidence in the
record or by evidence of the agency's bad faith, then summary
judgment is warranted on the basis of the affidavit alone."
*ACLU*, 628 F.3d at 619.

While Exemption 7(E)'s protection is generally limited to
techniques or procedures that are not well-known to the public,
even commonly known procedures may be protected from disclosure
if the disclosure could reduce or nullify their effectiveness.
*See, e.g.*, *Judicial Watch, Inc. v. Dep't of Comm.*, 337 F. Supp.

2d 146, 181 (D.D.C. 2004); *see Barnard v. Dep't of Homeland
Sec.*, 598 F. Supp. 2d 1, 23 (D.D.C. 2009) (rejecting plaintiff's
argument that because the public is generally aware of security
clearance procedures including marking of travel documents, use
of a computer database, and the use of a "no fly" list, agency
is not required to disclose all details concerning those
procedures); *but see Goldstein v. Office of Indep. Counsel*, No.
87-2028, 1999 WL 570862, *14 (D.D.C. July 29, 1999) (ordering
disclosure of two documents that were over ten years old and
discussed law enforcement techniques that had since become more
widely known).

Plaintiff makes several general arguments as to why the
Compliance Review Report Form, the H-1B Petition Fraud Referral
Sheet, and the Neufeld Memorandum are not properly redacted
pursuant to Exemption 7(E).  AILA principally argues that
because the BFCA Report made public several of the fraud
indicators, those indicators are no longer exempt from
disclosure because they are widely known.  In support of that
argument, plaintiff cites to cases that have found Exemption
7(E) does not cover information that is widely known or that
constitutes basic law enforcement techniques.  Pl.'s Br. at 16-
18.  Plaintiff also argues that certain factors, such as gross
income of a company, the number of employees in the company, and
the number of years the company has been in existence, do not

"indicate if and how to circumvent agency regulation" and should

not be exempt.  Pl.'s Br. at 18.

Defendants argue that Exemption 7(E) has been properly

invoked for all information withheld from AILA.  Defendants

assert that these records fall within the category of

investigatory and prosecutorial guidelines that courts have

found to be protected under Exemption 7(E).  Defs.' Br. at 18

(citing *PHE, Inc. v. Dep't of Justice*, 983 F.2d 248, 250-51

(D.C. Cir. 1993) (holding that portions of an FBI manual

describing patterns of violations, investigative techniques, and

sources of information available to investigators were protected

by 7(E))).  Defendants argue that the application and

interpretation of fraud indicators is not well known to the

public and constitutes internal law enforcement data that 7(E)

was designed to protect.  *Id*. at 20 (citing *Barnard,* 598 F.

Supp. 2d at 23.

The Court agrees with defendants that exemption 7(E) is

properly invoked as to the Compliance Review Report, the H-1B

Petition Fraud Referral Sheet, and the Neufeld Memorandum, and

the Court notes that plaintiff has not challenged any other

specific documents as improperly withheld under Exemption 7(E).

The Court finds that defendants have met their burden of

demonstrating that the disclosure of the fraud indicators

reasonably could lead to circumvention of laws or regulations.

*See Skinner*, 744 F. Supp. 2d at 214.   Specifically, the Court finds that the explanations provided by defendants indicate that the particular type of information withheld would provide a "roadmap" or "guidance" to those looking to circumvent the law, which would thwart future law enforcement efforts.   *See generally* Oct. 27, 2010 *Vaughn* Index, Watkins Decl., Ex. 21.

Furthermore, the Court agrees that plaintiff has not rebutted defendants' argument by establishing that those fraud indicators constitute "basic law enforcement techniques" that would be excluded from Exemption 7(E).   *See Barnard*, 598 F. Supp. 2d at 23.   The Court disagrees that factors such as the gross income of a company or the length of time a company has been in existence are factors that could not logically be used to circumvent agency regulation.   In addition, the mere fact that the public may know about site visits generally, or may know some information about fraud indicators does not mean that defendants must disclose all details concerning fraud indicators.   *See id.*   Accordingly, the Court finds that defendants have properly asserted Exemption 7(E) with respect to the Compliance Review Report, the H-1B Petition Fraud Referral Sheet, and the Neufeld Memorandum.

## C. Segregability

Even after determination that documents are exempt from disclosure, FOIA analysis is not properly concluded unless a court determines whether "any reasonably segregable portion of a record" can "be provided to any person requesting such record after deletion of the portions which are exempt." 5 U.S.C. § 552(b). "So important is this requirement that '[b]efore approving the application of a FOIA exemption, the district court *must* make specific findings of segregability regarding the documents to be withheld.'" *Elec. Frontier Found. v. Dep't of Justice*, --- F. Supp. 2d ----, 2011 WL 5966379, *10 (D.D.C. 2011) (quoting *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106)). The Court errs if it "simply approve[s] the withholding of an entire document without entering a finding on segregability or the lack thereof." *Powell v. U.S. Bureau of Prisons*, 927 F.2d 1239, 1242 n. 4 (D.C. Cir. 1992) (citations omitted).

"It has long been the rule in this Circuit that non-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions." *Mead Data Cent., Inc. v. Dep't of Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977). The agency should, for example, "'describe what proportion of the information in [the] documents,' if any, 'is non-exempt and how that material is dispersed through the document[s]." *Elec. Frontier Found.*, --- F. Supp. 2d at ----,

2011 WL 5966379, *11 (citing *Mead Data Cent., Inc.*, 566 F.2d 242, 261 (D.C. Cir. 1977)); *see King v. Dep't of Justice*, 830 F.2d 210, 219 (D.C. Cir. 1987) (*Vaughn* index must sufficiently identify the withheld material to enable the district court to make a rational decision whether the withheld material must be produced without actually viewing the documents).  Where an agency has publicly disclosed information that is similar to what is being withheld, its *Vaughn* submission must be "sufficiently detailed" to distinguish the withheld information from the public information.  *Army Times Pub. Co. v. Dep't of Air Force*, 998 F.2d 1067, 1071-72 (D.C. Cir. 1993).

Defendants argue that they have "established, with reasonable specificity, that responsive documents were redacted in part after a line-by-line review and after a determination that there were no reasonably segregable portions of documents appropriate for release."  Defs.' Br. at 23 (citing Sub. Eggleston Decl. ¶ 60).  Defendants conclude that they have therefore "complied with [their] duty to segregate exempt from non-exempt information."  *Id.*  The Court disagrees.

1. October 27, 2010 *Vaughn* Index

The October 27, 2010 *Vaughn* Index sets forth defendants' basis for withholding or redacting certain information as exempt.  USCIS states in the Substitute Eggleston Declaration

that the documents in the October 27 *Vaughn* Index were reviewed
for segregability and that USCIS "released all reasonably
segregable, nonexempt, non-privileged portions of the subject
documents."  Sub. Eggleston Decl. ¶ 45.

The Court finds that USCIS's October 27 *Vaughn* Index and
the related paragraphs of the Substitute Eggleston Declaration
to be inadequate to establish that all non-exempt, reasonably
segregable portions of the documents disclosed have been
produced.  For example, the entries for the Compliance Review
Report and the Neufeld Memorandum state only "[t]he balance of
the document remains eligible for protection under the above-
cited FOIA exemption."  Oct. 27, 2010 *Vaughn* Index, Watkins
Decl. Ex. 21, at 1.  With respect to the H-1B Petition Fraud
Referral Sheet, defendants indicate only that the "[a]gency
continues to withhold balance based on above-cited FOIA
exemption."  *Id*. at 2.  The submissions fail to describe the
proportion of exempt to non-exempt information and fail to
establish that any non-exempt information is "inextricably
intertwined" with exempt information.  *See Mead Data Cent.,
Inc.*, 566 F.2d at 260; *McGehee v. Dep't of Justice*, 800 F. Supp.
2d 220, 238 (D.D.C. 2011) ("Defendant's declarant's statement
that every effort was made to provide plaintiff with all
material in the public domain and with all reasonably segregable
portions of the releasable material falls far short of the

specificity required to justify non-segregation.  Therefore,

Defendant has not carried its burden of demonstrating that all

segregable material has been disclosed.") (citing *Johnson v.*

*Exec. Office for U.S. Attorneys*, 310 F.3d 771, 776 (D.C. Cir.

2002) (internal quotation marks omitted)).

Furthermore, because the BFCA Report and the Compliance

Review Report Instructions share a common subject matter (fraud

indicators) with the documents that USCIS has redacted and

listed in the October 27, 2010 *Vaughn* Index, the Court finds

that USCIS is required to specifically explain the difference

between what it has deemed appropriate for public disclosure and

what remains withheld.  Specifically, defendants must specify

how the redacted information differs from the BFCA Report and

the Compliance Review Report Instructions.  *See Army Times Pub.*

*Co. v. Dep't of Air Force*, 998 F.2d 1067, 1071-72 (D.C. Cir.

1993) (requiring *Vaughn* submission to be "sufficiently detailed"

to distinguish between the information being withheld and any

similar publicly-available information).

2. May 9, 2011 *Vaughn* Index

The May 9, 2011 *Vaughn* Index sets forth defendants' basis

for withholding information from documents located in searches

conducted during this litigation.  With respect to those

documents, the Substitute Eggleston Declaration states that

"[a]ll responsive documents were reviewed with an eye toward providing the fullest disclosure and, in furtherance of this goal, received a line-by-line examination in an effort to identify all reasonably segregable, unprivileged, nonexempt portions for release to plaintiff."  Sub. Eggleston Decl. ¶ 60.

The Court finds the May 9 Index to also be inadequate. First, the index is inadequate because none of the entries and the accompanying portions of the Substitute Eggleston Declaration specify the relationship between any exempt and non-exempt information in the documents.  The Court emphasizes that this requirement applies to all information withheld under any exemption, and not only the documents withheld under exemption 7(E).  *See McGehee*, 800 F. Supp. 2d at 238.  Furthermore, with respect to the documents exempted under 7(E), the Court finds that the May 9 Index and accompanying portions of the Substitute Eggleston Declaration fail to specifically explain how the exempted information differs from the publicly-disclosed Compliance Review Report Instructions and the BFCA Report.  For example, the document referenced on page 2 as "H-1B Primary Fraud Indicators for Referral (Rev. 08-28-08, D12)" appears from its description to relate to fraud indicators.  *See* May 9, 2011 *Vaughn* Index*,* Watkins Decl., Ex. 20, at 2.  The accompanying description does not, however, explain how the redacted information differs from information that the defendants have

33

chosen to publicly disclose.  As explained above, the Court

finds that USCIS is required to specifically explain the

difference between what it has deemed appropriate for public

disclosure and what remains withheld, in light of the existence

of the publicly-disclosed BFCA Report and the Compliance Review

Report Instructions.  Specifically, for any documents that

relate to the subject matter discussed in the BFCA Report and

the Compliance Review Report Instructions, defendants must

specify how the information redacted differs from what has been

officially disclosed.

### D. Resolution

Having found the USCIS's *Vaughn* submissions inadequate, the

Court has several options regarding how to now proceed in the

case, including whether to inspect the documents *in camera*,

requesting further affidavits, or allowing the plaintiff

discovery.  *See Elec. Frontier Found.*, 2011 WL 5966379, at *11

(citing *Spirko v. USPS*, 147 F.3d 992, 997 (D.C. Cir. 1998)).

Because a district court should not undertake *in camera* review

of withheld documents as a substitute for requiring an agency's

explanation of its claims exemptions in accordance with *Vaughn*,

*see id.*, the Court finds that the best approach is to direct

defendants to submit revised *Vaughn* submissions.  *See Army Times

Pub. Co.*, 998 F.2d at 1071-72.  The Court notes that the USCIS's

revised *Vaughn* submissions must be sufficiently detailed such that the Court and plaintiff can conduct their own reviews of the segregability of the non-exempt information, particularly in light of the previously-disclosed information regarding fraud indicators in the BFCA Report (Watkins Decl., Ex. 2) and the Compliance Review Report Instructions produced by defendants in response to plaintiff's FOIA Requests (Watkins Decl., Ex. 29). The *Vaughn* submissions should contain a segregability analysis for each document withheld in part or in full, identifying the proportion of exempt and non-exempt information, and specifically explaining why the withheld information cannot be produced.

## IV.  CONCLUSION

For the foregoing reasons, the Court concludes that defendants' *Vaughn* submissions and accompanying Substitute Eggleston Declaration fail to set forth a sufficient basis that "any reasonably segregable portion" of the documents defendants seek to withhold have been provided to plaintiff.  *See* 5 U.S.C. § 552(b).  Accordingly, defendants' cross-motion for summary judgment must be **DENIED** without prejudice, and plaintiff's motion for summary judgment must be **GRANTED** insofar as it challenges the segregability analysis set forth by defendants. Defendants are hereby directed to file revised *Vaughn* submissions that take into account the deficiencies identified

by the Court by no later than April 30, 2012.   The parties are
directed to file a joint recommendation for further proceedings
by no later than May 31, 2012.   An appropriate order accompanies
this Memorandum Opinion.

      It is so **ORDERED**.

**Signed:**     **Emmet G. Sullivan**
          **United States District Judge**
          **March 30, 2012**